No. 2012-1042

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

COMMIL USA, LLC,

*Plaintiff-Appellee*,

*v.*

CISCO SYSTEMS, INC.,

*Defendant-Appellant.*

Appeal from the United States District Court for the Eastern District of
Texas in case no. 07-CV-0341, Magistrate Judge Charles Everingham

## STATEMENT OF DEFENDANT-APPELLANT CISCO SYSTEMS, INC. IN SUPPORT OF CONTINUED PANEL REVIEW

JEFFREY E. OSTROW
HARRISON J. FRAHN IV
PATRICK E. KING
JONATHAN SANDERS
SIMPSON THACHER & BARTLETT LLP
2475 Hanover Street
Palo Alto, CA  94304
(650) 251-5000

HENRY B. GUTMAN
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY  10017
(212) 455-2000

June 12, 2015

WILLIAM F. LEE
MARK C. FLEMING
FELICIA H. ELLSWORTH
ERIC F. FLETCHER
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

SETH P. WAXMAN
WILLIAM G. MCELWAIN
FRANCESCO VALENTINI
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC  20006
(202) 663-6000

# CERTIFICATE OF INTEREST

Counsel Cisco Systems, Inc. certifies the following:

1.      The full name of every party or *amicus* represented by us is:

Cisco Systems, Inc.

2.      The names of the real party in interest represented by us is:

Not applicable

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

WILMER CUTLER PICKERING HALE AND DORR LLP:  William F. Lee, William G. McElwain, Mark C. Fleming, Jonathan Andron (former), Felicia H. Ellsworth, Seth P. Waxman, Francesco Valentini, Eric F. Fletcher

SIMPSON THACHER AND BARTLETT LLP:  George M. Newcombe, Henry B. Gutman, Jeffrey E. Ostrow, Harrison J. Frahn, IV, Patrick E. King, Victor Cole, Jonathan C. Sanders

IRELAND CARROLL & KELLEY, P.C.:  James Patrick Kelley, Otis W. Carroll, Jr.

POTTER MINTON P.C.: Michael E. Jones, Patrick Colber Clutter, IV

FINDLAY CRAFT, LLP: Eric Hugh Findlay

WARD & SMITH: Jack Wesley Hill

Dated:  June 12, 2015                     /s/ William F. Lee
                                          WILLIAM F. LEE

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ................................................................................i

TABLE OF AUTHORITIES ................................................................................ iii

STATEMENT OF RELATED CASES ..................................................................iv

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................2

ARGUMENT ........................................................................................................6

THE COURT SHOULD RETAIN THE CASE AND DECIDE THE
 NONINFRINGEMENT ISSUES PRESENTED IN CISCO'S ORIGINAL
 APPEAL ..........................................................................................................6

CONCLUSION ................................................................................................11

ADDENDUM

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Commil USA, LLC v. Cisco Systems, Inc.*,
  720 F.3d 1361 (Fed. Cir. 2013) ................................................................passim

*Consolidated Aluminum Corp. v. Foseco International Ltd.*,
  910 F.2d 804 (Fed. Cir. 1990) ...........................................................10

*DSU Medical Corp. v. JMS Co., Ltd.*,
  471 F.3d 1293 (Fed. Cir. 2006) (en banc) ...........................................8

*Gasoline Products Co. v. Champlin Refining Co.*,
  283 U.S. 494 (1931)...........................................................................10

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  131 S. Ct. 2060 (2011)......................................................................4, 6

*Limelight Networks, Inc. v. Akamai Technologies., Inc.*,
  134 S. Ct. 2111 (2014)...................................................................2, 7, 8

*Tenneco Resins, Inc. v. Reeves Brothers, Inc.*,
  736 F.2d 1508 (Fed. Cir. 1984) .........................................................10

*Toews v. United States*,
  376 F.3d 1371 (Fed. Cir. 2004) .........................................................10

## STATUTES

35 U.S.C.
  § 271(b) .............................................................................................5

## DOCKETED CASES

*Commil USA, LLC v. Cisco Sys., Inc.*, No. 13-896 (U.S.)..........................5

## STATEMENT OF RELATED CASES

The prior panel opinion in this case is reported at *Commil USA, LLC v. Cisco Systems, Inc.*, 720 F.3d 1361 (Fed. Cir. 2013).  The en banc Court denied Commil's petition for rehearing in an order reported at *Commil USA, LLC v. Cisco Systems, Inc.*, 737 F.3d 699 (Fed. Cir. 2013).  The panel and en banc Court also denied Cisco's petition for rehearing in an unreported order.  Order, No. 12-1042 (Oct. 25, 2013).

The Supreme Court granted Commil's petition for a writ of certiorari in part on December 5, 2014.  135 S. Ct. 752.  The Supreme Court's slip opinion ("Op."), which issued on May 26, 2015, is attached to this filing and is reported at 135 S. Ct. 1920.  The Supreme Court's judgment remanding the case to this Court for further proceedings is expected to issue on or after June 22, 2015.

On May 24, 2011, Commil brought a separate action against Cisco for future damages for infringement of U.S. Patent No. 6,430,395 ("the '395 patent"), which is the patent-in-suit in this action.  *Commil USA, LLC v. Cisco Sys., Inc.*, No. 2:11-cv-265 (E.D. Tex.).  On September 28, 2011, the district court opened another action for the determination of future damages involving the '395 patent.  *Commil USA, LLC v. Cisco Sys., Inc.*, No. 2:11-cv-417 (E.D. Tex.).  On February 21, 2012, the district court consolidated the two cases pertaining to future damages and stayed them pending the outcome of the appeal in this case.  Order, *Commil USA,*

*LLC v. Cisco Sys., Inc.*, No. 2:11-cv-265 (E.D. Tex. Feb. 21, 2012); *see also*

Docket Entry, *Commil USA, LLC v. Cisco Sys., Inc.*, No. 2:11-cv-417 (E.D. Tex.

Feb. 23, 2012).

No other appeals from the district court action presently on appeal were

previously before this or any other appellate court. Counsel for Cisco are unaware

of any specific cases, other than those mentioned above, that will directly affect or

be directly affected by this Court's decision regarding the patent claims in the

present appeal.

# INTRODUCTION

This case will soon be remanded from the Supreme Court, at which point the panel may require additional statements or briefs, remand the case to the trial court, or "take any other action consistent with the opinion of the Supreme Court."  Fed. Cir. IOP 15.3.  Cisco respectfully requests that the panel retain the case and decide the unresolved noninfringement arguments raised previously in Cisco's original appeal briefs, which urged that Cisco could not be held liable for induced infringement because there was no substantial evidence that Cisco's customers practiced all limitations of the claimed method.  *See* Opening Br. 31-35; Reply Br. 9-14.  The panel declined to reach Cisco's noninfringement arguments in its initial 2013 decision after the panel unanimously decided that Cisco was entitled to a third trial on induced infringement due to the district court's erroneous jury instructions.  *Commil*, 720 F.3d at 1372.

The noninfringement arguments raised by Cisco have the potential to dispose of the case and render any further trial proceedings unnecessary.  The noninfringement issues may be resolved based on the briefs and oral argument already received by the Court.  Resolving the arguments now could save the district court from conducting an unnecessary third trial, this Court from hearing an unnecessary second appeal, and the parties from litigating unnecessary proceedings.  Moreover, since the panel's decision, the Supreme Court in

*Limelight Networks, Inc. v. Akamai Technologies., Inc.*, 134 S. Ct. 2111 (2014),

decided important principles of inducement law relevant to Cisco's

noninfringement arguments, making their immediate resolution even more

appropriate. Accordingly, principles of judicial efficiency and now-settled legal

doctrine support immediate resolution of Cisco's noninfringement arguments.

## BACKGROUND

Commil purchased the '395 patent in the spring of 2007 and sued Cisco for

infringement less than five months later. A5805(69:12-13); A5821(131:11-

133:25); A1500-1504. After the first trial in May 2010, the jury found Cisco liable

for direct, but not induced, infringement. A135-137. The jury found that Cisco

had not met its burden of proving that the asserted claims were invalid and

awarded Commil $3.7 million in damages. A138-139. The district court

subsequently ordered a new trial based on its conclusion that a statement by

Cisco's local counsel "affected the jury's ability to discharge the functions for

which they were empaneled." A6057. Over Cisco's objection, the district court

ordered a partial retrial limited to the issues with which Commil was dissatisfied:

induced infringement and damages. A7.

At the second trial, Commil failed to prove that either Cisco or its customers

practice all of the steps in the asserted method claims, and Cisco adduced evidence

confirming that Cisco's customers do not practice two of the steps in the claimed

method.  Opening Br. 31-35.  Notwithstanding Commil's failure to prove that any

underlying direct infringer practiced all of the claim steps as required for

inducement liability, the jury found Cisco liable for induced infringement and

awarded Commil $63.8 million in damages.  A163-164.  The district court denied

Cisco's motion for judgment as a matter of law of no inducement, which again

raised Cisco's argument that its customers do not practice all of the steps in the

method claims asserted by Commil.  A28-29.  The court entered final judgment

against Cisco for $74 million (A32-33), after which Cisco commenced this appeal.[1]

In its decision dated June 25, 2013, a panel of this Court unanimously

concluded that Cisco was entitled to a new trial for induced infringement because

the jury was erroneously instructed that Cisco could be held liable for inducement

if it "knew or should have known" that its customers directly infringed.  *Commil*,

720 F.3d at 1366-1367; *id.* at 1373 (Newman, J., concurring in part, dissenting in

part); *id.* at 1375 (O'Malley, J., concurring in part and dissenting in part).  The

panel explained that this negligence instruction contravened clear Supreme Court

precedent requiring "'knowledge that the induced acts constitute patent

---

[1]      Notably, Commil did not pursue damages for Cisco's direct infringement in the second trial, leading Judge O'Malley to conclude, on appeal, that Commil "has abandoned its direct infringement claims against Cisco."  *Commil*, 720 F.3d at 1377 n.4.

infringement.'"  *Id.* at 1366 (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011)).

A panel majority (Prost & O'Malley, JJ.) also concluded that Cisco was entitled to present evidence of its good-faith belief that the patent-in-suit was invalid to negate the specific intent required for induced infringement.  *Id.* at 1367-1369; *id.* at 1375 (O'Malley, J.).

A different panel majority (Prost & Newman, JJ.) declined to reach Cisco's argument that its customers do not directly infringe the patent-in-suit and that, without any direct infringer, there could be no induced infringement.  *Id.* at 1372. The majority explained that "[b]ecause we remand for a new trial, we do not reach the issue[] of infringement."  *Id.*  Judge O'Malley dissented from the majority's decision not to address Cisco's noninfringement arguments, noting that "it is within the scope of our authority on this record to resolve [the issues] now," and that the noninfringement issue was "potentially dispositive" of the case.  *Id.* at 1377 (O'Malley, J.).  The panel also declined to address Cisco's argument that Commil had failed to prove Cisco's pre-suit knowledge of the patent (Opening Br. 37-39), an issue that will remain open if the case is remanded for a third trial on induced infringement.  Finally, the panel also left open Cisco's appellate challenge to the damages award.  *Commil*, 720 F.3d at 1372.

Commil petitioned for a writ of certiorari, asking the Supreme Court to decide "[w]hether the Federal Circuit erred in holding that a defendant's belief that a patent is invalid is a defense to induced infringement" and "[w]hether the Federal Circuit erred in holding that *Global-Tech* … required retrial on the issue of intent under 35 U.S.C. § 271(b)." Pet. i-ii, *Commil USA, LLC v. Cisco Sys., Inc.*, No. 13-896 (U.S.). The Court granted Commil's petition in part, limiting the appeal to the question whether a defendant's good-faith belief of invalidity is a defense to induced infringement.

On May 26, 2015, the Supreme Court vacated the panel's decision, concluding that "belief in invalidity is no defense to a claim of induced infringement." Op. 14. The Court explained that "because infringement and validity are separate issues …, belief regarding validity cannot negate the scienter required under § 271(b)." Op. 9. However, the Court rejected Commil's argument that "the party charged with inducing infringement need not know that the acts it induced would infringe." Op. 6. Instead, the Court "reaffirm[ed]" its holding in *Global-Tech*, explaining that "liability for induced infringement can only attach if the defendant knew of the patent and knew as well that 'the induced acts constitute patent infringement.'" *Id.* (quoting *Global-Tech*, 131 S. Ct. at 2068).

The Supreme Court's decision did not disturb this Court's conclusion that a third trial on inducement will be required. Indeed, the Supreme Court specifically

noted that the panel's unanimous holding "requir[ing] a new trial on the inducement claim with a corrected instruction on knowledge, is not in question here." Op. 4. And the Court's reaffirmation of its holding in *Global-Tech* that induced infringement requires knowledge that the induced acts constitute infringement confirms that the panel's holding was correct in this regard. However, as explained herein and in Cisco's original appeal, the record evidence shows that Commil cannot prevail on its inducement claims because Cisco's customers—the alleged underlying direct infringers—do not carry out all of the claimed steps. It is now settled that there can be no inducement claim against Cisco in this scenario.

## ARGUMENT

### THE COURT SHOULD RETAIN THE CASE AND DECIDE THE NONINFRINGEMENT ISSUES PRESENTED IN CISCO'S ORIGINAL APPEAL

Rather than immediately remanding this case to the district court for a potentially unnecessary third trial on induced infringement, the Court should retain jurisdiction and decide the noninfringement issues raised in Cisco's original appeal. No additional briefing or oral argument would be required, and the district court and this Court could potentially be spared an unnecessary third trial and

second appeal if the Court decides either one of Cisco's two noninfringement arguments in Cisco's favor.[2]

Cisco's noninfringement arguments turn on the now-settled and undisputed proposition that a judgment of induced infringement depends on showing that Cisco induced another party to infringe the patent directly, which requires proof that the other party performed ***all*** steps of the claimed method.  *See* Opening Br. 33-34; *Limelight*, 134 S. Ct. at 2117 ("inducement liability may arise 'if, but only if, [there is] … direct infringement'" by a single direct infringer); *see also* A6389(98:5-7) (instructing the jury that it could find infringement by Cisco's customers only if "a single party [] perform[s] each and every step of [the] claimed method").  The record fails this requirement in two ways.

***First***, the undisputed record shows that Cisco's customers do not practice the "dividing a short-range communication protocol" step required by claim 1, the patent's sole independent claim.  Opening Br. 33-35; Reply Br. 12-14.  As Cisco explained in its opening brief, and as the Supreme Court has now confirmed, "[t]o establish indirect infringement, Commil was required to show that Cisco's customers performed each and every step of the asserted method claims."  Opening Br. 33 (citing *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304-1306 (Fed. Cir.

---

[2]    If the Court wishes to receive further briefing or hear oral argument on the matter, Cisco stands ready to provide it.

2006) (en banc)); *see also Limelight*, 134 S. Ct. at 2117.  The district court construed the phrase "a short-range communication protocol" to mean "a set of procedures required to initiate and maintain short-range communication between two or more devices."  A1.  Commil's expert ***conceded*** that the WiFi procedures in Cisco's accused products were not "divided" by Cisco's customers because any dividing was performed by Cisco when the products were designed and manufactured.  Opening Br. 34-35; A6197(68:12-15) (Commil's expert agreeing that "the division of the set of procedures is done by Cisco when Cisco designs the system"); A6198(70:10-13) ("Q. And isn't that your opinion, sir, for all acts of direct infringement, all acts of direct infringement, that the dividing was done by Cisco? A. Dividing is done by Cisco, yes.").  The inventors and Cisco's witness agreed that the customers did not divide the WiFi procedures.  A6321(96:14-21); A6323(104:23-105:18); A6290(123:23-124:4).  Because Cisco's customers do not "divid[e] a short-range communication protocol," there is no single direct infringer performing all of the claimed steps, and Cisco cannot be held liable for inducement.[3]

---

[3]    During the second trial, the parties agreed that a theory of "divided" infringement by multiple parties was not at issue; at the parties' request, the district court omitted a proposed jury instruction about divided infringement.  Opening Br. 34 n.9.

*Second*, and independently, the undisputed record shows that ***nobody***—not Cisco and not its customers—"run[s] … an instance" of the relevant WiFi protocol "for each connection," which is required by the second step of the claimed method. Opening Br. 31-33; Reply Br. 9-12. As construed, this step requires "for each connection … running at the Base Station a copy of the low-level protocol supporting *only* that connection and running at the Switch a corresponding separate copy of the high-level protocol supporting *only* that connection." Opening Br. 31-32 (quoting A2). Commil's expert ***conceded*** that Cisco's accused WiFi access points (which correspond to the claimed "Base Station") "run only one copy of the WiFi protocol regardless of the number of mobile units" connected. Opening Br. 32 (citing A6204(97:3-8)); *see also* Reply Br. 9-10; A6196(62:1-14) (confirming that WiFi beacon is part of low-level protocol and that, "whether it's one or tens or hundreds of different mobile units connected with a Cisco access point, there's only one Wi-Fi beacon generation that supports all of those mobile units at once"). And Commil failed to adduce any evidence that Cisco's accused WiFi controllers (which correspond to the claimed "Switch") "run[] separate copies of the high-level WiFi protocol for each connection of a mobile unit." Opening Br. 33; *see also* Reply Br. 11-12.

The record and intervening legal developments confirm that no finding of induced infringement is possible in this case. Accordingly, sound judicial

management counsels in favor of deciding Cisco's noninfringement arguments that have been preserved, fully briefed, and argued to this Court.  This Court has frequently recognized that "[b]asic fairness, avoidance of unwarranted delay and the imposition of additional costs on the parties, and conservation of judicial resources" are all important considerations that counsel efficient resolution of cases.  *Toews v. United States*, 376 F.3d 1371, 1381 (Fed. Cir. 2004); *see also Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 814 (Fed. Cir. 1990) (noting the "expenditure of additional judicial resources" required by a remand order); *Tenneco Resins, Inc. v. Reeves Bros., Inc.*, 736 F.2d 1508, 1512 (Fed. Cir. 1984) (noting "[t]he potential costs and wasted judicial resources of an additional trial on substantially the same evidence").[4]

Here, these important considerations strongly favor immediate resolution of Cisco's noninfringement arguments after the case returns from the Supreme Court. As Judge O'Malley explained, if the case returns to the district court for a third trial on inducement, it is likely that this Court "will see the case return in much the

---

[4]    If, however, the panel declines to direct judgment of noninfringement, the correct course remains a full retrial on induced infringement.  Partial retrials violate the Seventh Amendment "unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice."  *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931).  Whether Cisco's customers practiced all steps of the claimed invention is inextricably intertwined with the question whether Cisco had knowledge of direct infringement.  These issues may not be tried separately.

same posture.  If the new panel ultimately concludes Cisco is correct as to either one of the required steps of claim 1 … we will have forced the parties and the trial court to go through a new trial when none was necessary." *Commil*, 720 F.3d at 1377 (O'Malley, J., concurring in part and dissenting in part).  The issues have been fully briefed and argued and may be decided without further submissions by the parties.  Cisco respectfully submits that the Court should follow this course and resolve Cisco's noninfringement arguments in the manner advocated in Cisco's appellate briefs.

## CONCLUSION

For the foregoing reasons, the Court should retain the case after it is remanded by the Supreme Court, reverse the judgment below, and direct entry of judgment of noninfringement.

Respectfully submitted,

/s/ William F. Lee

JEFFREY E. OSTROW                          WILLIAM F. LEE
HARRISON J. FRAHN IV                       MARK C. FLEMING
PATRICK E. KING                            FELICIA H. ELLSWORTH
JONATHAN SANDERS                           ERIC F. FLETCHER
SIMPSON THACHER & BARTLETT LLP             WILMER CUTLER PICKERING
2475 Hanover Street                            HALE AND DORR LLP
Palo Alto, CA  94304                       60 State Street
(650) 251-5000                             Boston, MA  02109
                                           (617) 526-6000

HENRY B. GUTMAN
SIMPSON THACHER & BARTLETT LLP             SETH P. WAXMAN
425 Lexington Avenue                       WILLIAM G. MCELWAIN
New York, NY  10017                        FRANCESCO VALENTINI
(212) 455-2000                             WILMER CUTLER PICKERING
                                               HALE AND DORR LLP
                                           1875 Pennsylvania Avenue, N.W.
                                           Washington, DC  20006
                                           (202) 663-6000

                                           *Attorneys for Defendant-Appellant*
                                           *Cisco Systems, Inc.*

June 12, 2015

# ADDENDUM

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.*, 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## COMMIL USA, LLC *v.* CISCO SYSTEMS, INC.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

No. 13–896.   Argued March 31, 2015—Decided May 26, 2015

Petitioner Commil USA, LLC, holder of a patent for a method of implementing short-range wireless networks, filed suit, claiming that respondent Cisco Systems, Inc., a maker and seller of wireless networking equipment, had directly infringed Commil's patent in its networking equipment and had induced others to infringe the patent by selling the infringing equipment for them to use. After two trials, Cisco was found liable for both direct and induced infringement. With regard to inducement, Cisco had raised the defense that it had a good-faith belief that Commil's patent was invalid, but the District Court found Cisco's supporting evidence inadmissible. The Federal Circuit affirmed the District Court's judgment in part, vacated in part, and remanded, holding, as relevant here, that the trial court erred in excluding Cisco's evidence of its good-faith belief that Commil's patent was invalid.

*Held*: A defendant's belief regarding patent validity is not a defense to an induced infringement claim. Pp. 5–14.

(a) While this case centers on inducement liability, 35 U. S. C. §271(b), which attaches only if the defendant knew of the patent and that "the induced acts constitute patent infringement," *Global-Tech Appliances, Inc.* v. *SEB S. A.*, 563 U. S. ___, ___, the discussion here also refers to direct infringement, §271(a), a strict-liability offense in which a defendant's mental state is irrelevant, and contributory infringement, §271(c), which, like inducement liability, requires knowledge of the patent in suit and knowledge of patent infringement, *Aro Mfg. Co.* v. *Convertible Top Replacement Co.*, 377 U. S. 476, 488 (*Aro II*). Pp. 5–6.

(b) In *Global-Tech*, this Court held that "induced infringement . . . requires knowledge that the induced acts constitute patent infringe-

Syllabus

ment," 563 U. S., at ___, relying on the reasoning of *Aro II*, a contributory infringement case, because the mental state imposed in each instance is similar. Contrary to the claim of Commil and the Government as *amicus,* it was not only knowledge of the existence of respondent's patent that led the Court to affirm the liability finding in *Global-Tech,* but also the fact that petitioner's actions demonstrated that it knew it would be causing customers to infringe respondent's patent. 563 U. S., at ___. Qualifying or limiting that holding could make a person, or entity, liable for induced or contributory infringement even though he did not know the acts were infringing. *Global-Tech* requires more, namely proof the defendant knew the acts were infringing. And that opinion was clear in rejecting any lesser mental state as the standard. *Id.,* at ___. Pp. 6–9.

(c) Because induced infringement and validity are separate issues and have separate defenses under the Act, belief regarding validity cannot negate §271(b)'s scienter requirement of "actively induce[d] infringement," *i.e.*, the intent to "bring about the desired result" of infringement, 563 U. S., at ___. When infringement is the issue, the patent's validity is not the question to be confronted. See *Cardinal Chemical Co.* v. *Morton Int'l, Inc.,* 508 U. S. 83. Otherwise, the long held presumption that a patent is valid, §282(a), would be undermined, permitting circumvention of the high bar—the clear and convincing standard—that defendants must surmount to rebut the presumption. See *Microsoft Corp.* v. *i4i Ltd. Partnership,* 564 U. S. ___, ___–___. To be sure, if a patent is shown to be invalid, there is no patent to be infringed. But the orderly administration of the patent system requires courts to interpret and implement the statutory framework to determine the procedures and sequences that the parties must follow to prove the act of wrongful inducement and any related issues of patent validity.

There are practical reasons not to create a defense of belief in invalidity for induced infringement. Accused inducers who believe a patent is invalid have other, proper ways to obtain a ruling to that effect, including, *e.g.,* seeking *ex parte* reexamination of the patent by the Patent and Trademark Office, something Cisco did here. Creating such a defense could also have negative consequences, including, *e.g.,* rendering litigation more burdensome for all involved. Pp. 9–13.

(d) District courts have the authority and responsibility to ensure that frivolous cases—brought by companies using patents as a sword to go after defendants for money—are dissuaded, though no issue of frivolity has been raised here. Safeguards—including, *e.g.,* sanctioning attorneys for bringing such suits, see Fed. Rule Civ. Proc. 11—combined with the avenues that accused inducers have to obtain rulings on the validity of patents, militate in favor of maintaining the

Syllabus

separation between infringement and validity expressed in the Patent Act.  Pp. 13–14.

720 F. 3d 1361, vacated and remanded.

KENNEDY, J., delivered the opinion of the Court, in which GINSBURG, ALITO, SOTOMAYOR, and KAGAN, JJ., joined, and in which THOMAS, J., joined as to Parts II–B and III.  SCALIA, J., filed a dissenting opinion, in which ROBERTS, C. J., joined.  BREYER, J., took no part in the consideration or decision of the case.

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 13–896

_____

## COMMIL USA, LLC, PETITIONER *v.* CISCO SYSTEMS, INC.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[May 26, 2015]

JUSTICE KENNEDY delivered the opinion of the Court.*

A patent holder, and the holder's lawful licensees, can recover for monetary injury when their exclusive rights are violated by others' wrongful conduct. One form of patent injury occurs if unauthorized persons or entities copy, use, or otherwise infringe upon the patented invention. Another form of injury to the patent holder or his licensees can occur when the actor induces others to infringe the patent. In the instant case, both forms of injury—direct infringement and wrongful inducement of others to commit infringement—were alleged. After two trials, the defendant was found liable for both types of injury. The dispute now before the Court concerns the inducement aspect of the case.

I

The patent holder who commenced this action is the petitioner here, Commil USA, LLC. The technical details of Commil's patent are not at issue. So it suffices to say, with much oversimplification, that the patent is for a

_____

*JUSTICE THOMAS joins Parts II–B and III of this opinion.

Opinion of the Court

method of implementing short-range wireless networks.
Suppose an extensive business headquarters or a resort or
a college campus wants a single, central wireless system
(sometimes called a Wi-Fi network).  In order to cover the
large space, the system needs multiple base stations so a
user can move around the area and still stay connected.
Commil's patent relates to a method of providing faster
and more reliable communications between devices and
base stations.  The particular claims of Commil's patent
are discussed in the opinion of the United States Court of
Appeals for the Federal Circuit.  720 F. 3d 1361, 1364–
1365, 1372 (2013).

Commil brought this action against Cisco Systems, Inc.,
which makes and sells wireless networking equipment.  In
2007, Commil sued Cisco in the United States District
Court for the Eastern District of Texas.  Cisco is the re-
spondent here.  Commil alleged that Cisco had infringed
Commil's patent by making and using networking equip-
ment.  In addition Commil alleged that Cisco had induced
others to infringe the patent by selling the infringing
equipment for them to use, in contravention of Commil's
exclusive patent rights.

At the first trial, the jury concluded that Commil's
patent was valid and that Cisco had directly infringed.
The jury awarded Commil $3.7 million in damages.  As to
induced infringement, the jury found Cisco not liable.
Commil filed a motion for a new trial on induced infringe-
ment and damages, which the District Court granted
because of certain inappropriate comments Cisco's counsel
had made during the first trial.

A month before the second trial Cisco went to the United
States Patent and Trademark Office and asked it to re-
examine the validity of Commil's patent.  The Office
granted the request; but, undoubtedly to Cisco's disap-
pointment, it confirmed the validity of Commil's patent.
App. 159, 162.

Back in the District Court, the second trial proceeded, limited to the issues of inducement and damages on that issue and direct infringement. As a defense to the claim of inducement, Cisco argued it had a good-faith belief that Commil's patent was invalid. It sought to introduce evidence to support that assertion. The District Court, however, ruled that Cisco's proffered evidence of its good-faith belief in the patent's invalidity was inadmissible. While the District Court's order does not provide the reason for the ruling, it seems the court excluded this evidence on the assumption that belief in invalidity is not a defense to a plaintiff's claim that the defendant induced others to infringe.

At the close of trial, and over Cisco's objection, the District Court instructed the jury that it could find inducement if "Cisco actually intended to cause the acts that constitute . . . direct infringement and that Cisco knew or should have known that its actions would induce actual infringement." *Id.,* at 21. The jury returned a verdict for Commil on induced infringement and awarded $63.7 million in damages.

After the verdict, but before judgment, this Court issued its decision in *Global-Tech Appliances, Inc.* v. *SEB S. A.,* 563 U. S. ____ (2011). That case, as will be discussed in more detail, held that, in an action for induced infringement, it is necessary for the plaintiff to show that the alleged inducer knew of the patent in question and knew the induced acts were infringing. *Id.,* at ___ (slip op., at 10). Relying on that case, Cisco again urged that the jury instruction was incorrect because it did not state knowledge as the governing standard for inducement liability. The District Court denied Cisco's motion and entered judgment in Commil's favor.

Cisco appealed to the United States Court of Appeals for the Federal Circuit. The Court of Appeals affirmed in part, vacated in part, and remanded for further proceed-

ings. The court concluded it was error for the District Court to have instructed the jury that Cisco could be liable for induced infringement if it "'knew or should have known'" that its customers infringed. 720 F. 3d, at 1366. The panel held that "induced infringement 'requires knowledge that the induced acts constitute patent infringement.'" *Ibid.* (quoting *Global-Tech*, *supra,* at ___ (slip op., at 10)). By stating that Cisco could be found liable if it "'knew or should have known that its actions would induce actual infringement,'" the Court of Appeals explained, the District Court had allowed "the jury to find [Cisco] liable based on mere negligence where knowledge is required." 720 F. 3d, at 1366. That ruling, which requires a new trial on the inducement claim with a corrected instruction on knowledge, is not in question here.

What is at issue is the second holding of the Court of Appeals, addressing Cisco's contention that the trial court committed further error in excluding Cisco's evidence that it had a good-faith belief that Commil's patent was invalid. Beginning with the observation that it is "axiomatic that one cannot infringe an invalid patent," the Court of Appeals reasoned that "evidence of an accused inducer's good-faith belief of invalidity may negate the requisite intent for induced infringement." *Id.,* at 1368. The court saw "no principled distinction between a good-faith belief of invalidity and a good-faith belief of non-infringement for the purpose of whether a defendant possessed the specific intent to induce infringement of a patent." *Ibid.*

Judge Newman dissented on that point. In Judge Newman's view a defendant's good-faith belief in a patent's invalidity is not a defense to induced infringement. She reasoned that "whether there is infringement in fact does not depend on the belief of the accused infringer that it might succeed in invalidating the patent." *Id.,* at 1374 (opinion concurring in part and dissenting in part). Both parties filed petitions for rehearing en banc, which were

denied. 737 F. 3d 699, 700 (2013). Five judges, however, would have granted rehearing en banc to consider the question whether a good-faith belief in invalidity is a defense to induced infringement. *Id.,* at 700 (Reyna, J., dissenting from denial of rehearing en banc).

This Court granted certiorari to decide that question. 574 U. S. ___ (2014).

## II

Although the precise issue to be addressed concerns a claim of improper inducement to infringe, the discussion to follow refers as well to direct infringement and contributory infringement, so it is instructive at the outset to set forth the statutory provisions pertaining to these three forms of liability. These three relevant provisions are found in §271 of the Patent Act. 35 U. S. C. §271.

Subsection (a) governs direct infringement and provides:

> "Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

Under this form of liability, a defendant's mental state is irrelevant. Direct infringement is a strict-liability offense. *Global-Tech*, 563 U. S., at ___ (slip op., at 5, n. 2).

Subsection (b) governs induced infringement:

> "Whoever actively induces infringement of a patent shall be liable as an infringer."

In contrast to direct infringement, liability for inducing infringement attaches only if the defendant knew of the patent and that "the induced acts constitute patent infringement." *Id.,* at ___ (slip op., at 10). In Commil and the Government's view, not only is knowledge or belief in

the patent's validity irrelevant, they further argue the party charged with inducing infringement need not know that the acts it induced would infringe. On this latter point, they are incorrect, as will be explained below.

Subsection (c) deals with contributory infringement:

> "Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use, shall be liable as a contributory infringer."

Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement. *Aro Mfg. Co.* v. *Convertible Top Replacement Co.*, 377 U. S. 476, 488 (1964) (*Aro II*).

This case asks a question of first impression: whether knowledge of, or belief in, a patent's validity is required for induced infringement under §271(b).

### A

Before turning to the question presented, it is necessary to reaffirm what the Court held in *Global-Tech*. Commil and the Government (which supports Commil in this case) argue that *Global-Tech* should be read as holding that only knowledge of the patent is required for induced infringement. That, as will be explained, would contravene *Global-Tech*'s explicit holding that liability for induced infringement can only attach if the defendant knew of the patent and knew as well that "the induced acts constitute patent infringement." 563 U. S., at ___ (slip op., at 10).

Opinion of the Court

In *Global-Tech*, the plaintiff, SEB, had invented and patented a deep fryer. A few years later, Sunbeam asked Pentalpha to supply deep fryers for Sunbeam to sell. To make the deep fryer, Pentalpha bought an SEB fryer and copied all but the cosmetic features. Pentalpha then sold the fryers to Sunbeam, which in turn sold them to customers. SEB sued Pentalpha for induced infringement, arguing Pentalpha had induced Sunbeam and others to sell the infringing fryers in violation of SEB's patent rights. In defense, Pentalpha argued it did not know the deep fryer it copied was patented and therefore could not be liable for inducing anyone to infringe SEB's patent. The question presented to this Court was "whether a party who 'actively induces infringement of a patent' under 35 U. S. C. §271(b) must know that the induced acts constitute patent infringement." *Id.,* at ___ (slip op., at 1).

After noting the language of §271(b) and the case law prior to passage of the Patent Act did not resolve the question, the *Global-Tech* Court turned to *Aro II*, a case about contributory infringement. The *Global-Tech* Court deemed that rules concerning contributory infringement were relevant to induced infringement, because the mental state imposed in each instance is similar. Before the Patent Act, inducing infringement was not a separate theory of indirect liability but was evidence of contributory infringement. 563 U. S., at ___ (slip op., at 5). Thus, in many respects, it is proper to find common ground in the two theories of liability.

*Aro II* concluded that to be liable for contributory infringement, a defendant must know the acts were infringing. 377 U. S*.,* at 488. In *Global-Tech*, the Court said this reasoning was applicable, explaining as follows:

"Based on this premise, it follows that the same knowledge is needed for induced infringement under §271(b). As noted, the two provisions have a common

origin in the pre-1952 understanding of contributory infringement, and the language of the two provisions creates the same difficult interpretive choice. It would thus be strange to hold that knowledge of the relevant patent is needed under §271(c) but not under §271(b).

"Accordingly, we now hold that induced infringement under §271(b) requires knowledge that the induced acts constitute patent infringement." 563 U. S., at ___ (slip op., at 10).

In support of Commil, the Government argues against the clear language of *Global-Tech*. According to the Government, all *Global-Tech* requires is knowledge of the patent: "The Court did not definitively resolve whether Section 271(b) additionally requires knowledge of the infringing nature of the induced acts." Brief for United States as *Amicus Curiae* 9. See also Brief for Petitioner 17. Together, Commil and the Government claim the "factual circumstances" of *Global-Tech* "did not require" the Court to decide whether knowledge of infringement is required for inducement liability. Brief for United States as *Amicus Curiae* 12. See also Brief for Petitioner 23–24. But in the Court's *Global-Tech* decision, its description of the factual circumstances suggests otherwise. The Court concluded there was enough evidence to support a finding that Pentalpha knew "the infringing nature of the sales it encouraged Sunbeam to make." 563 U. S., at ___ (slip op., at 14). It was not only knowledge of the existence of SEB's patent that led the Court to affirm the liability finding but also it was the fact that Pentalpha copied "all but the cosmetic features of SEB's fryer," demonstrating Pentalpha knew it would be causing customers to infringe SEB's patent. *Id.,* at ___ (slip op., at 15).

Accepting the Government and Commil's argument would require this Court to depart from its prior holding.

Opinion of the Court

See *id.,* at ___ (slip op., at 10). See also *id.,* at ___ (KENNEDY, J., dissenting) (slip op., at 1) ("The Court is correct, in my view, to conclude that . . . to induce infringement a defendant must know the acts constitute patent infringement" (internal quotation marks omitted)). And the *Global-Tech* rationale is sound. Qualifying or limiting its holding, as the Government and Commil seek to do, would lead to the conclusion, both in inducement and contributory infringement cases, that a person, or entity, could be liable even though he did not know the acts were infringing. In other words, even if the defendant reads the patent's claims differently from the plaintiff, and that reading is reasonable, he would still be liable because he knew the acts might infringe. *Global-Tech* requires more. It requires proof the defendant knew the acts were infringing. And the Court's opinion was clear in rejecting any lesser mental state as the standard. *Id.,* at ___ (slip op., at 13–14).

## B

The question the Court confronts today concerns whether a defendant's belief regarding patent validity is a defense to a claim of induced infringement. It is not. The scienter element for induced infringement concerns infringement; that is a different issue than validity. Section 271(b) requires that the defendant "actively induce[d] infringement." That language requires intent to "bring about the desired result," which is infringement. *Id.,* at ___ (slip op., at 4). And because infringement and validity are separate issues under the Act, belief regarding validity cannot negate the scienter required under §271(b).

When infringement is the issue, the validity of the patent is not the question to be confronted. In *Cardinal Chemical Co.* v. *Morton Int'l, Inc.*, 508 U. S. 83 (1993), the Court explained, "A party seeking a declaratory judgment of invalidity presents a claim independent of the patent-

ee's charge of infringement." *Id.,* at 96. It further held noninfringement and invalidity were "alternative grounds" for dismissing the suit. *Id.,* at 98. And in *Deposit Guaranty Nat. Bank* v. *Roper*, 445 U. S. 326 (1980), the Court explained that an accused infringer "may prevail either by successfully attacking the validity of the patent or by successfully defending the charge of infringement." *Id.,* at 334. These explanations are in accord with the long-accepted truth—perhaps the axiom—that infringement and invalidity are separate matters under patent law. See *Pandrol USA, LP* v. *Airboss R. Prods., Inc.*, 320 F. 3d 1354, 1365 (CA Fed. 2003).

Indeed, the issues of infringement and validity appear in separate parts of the Patent Act. Part III of the Act deals with "Patents and Protection of Patent Rights," including the right to be free from infringement. §§251–329. Part II, entitled "Patentability of Inventions and Grants of Patents," defines what constitutes a valid patent. §§100–212. Further, noninfringement and invalidity are listed as two separate defenses, see §§282(b)(1), (2), and defendants are free to raise either or both of them. See *Cardinal, supra,* at 98. Were this Court to interpret §271(b) as permitting a defense of belief in invalidity, it would conflate the issues of infringement and validity.

Allowing this new defense would also undermine a presumption that is a "common core of thought and truth" reflected in this Court's precedents for a century. *Radio Corp. of America* v. *Radio Engineering Laboratories, Inc.*, 293 U. S. 1, 8 (1934). Under the Patent Act, and the case law before its passage, a patent is "presumed valid." §282(a); *id.,* at 8. That presumption takes away any need for a plaintiff to prove his patent is valid to bring a claim. But if belief in invalidity were a defense to induced infringement, the force of that presumption would be lessened to a drastic degree, for a defendant could prevail if he proved he reasonably believed the patent was invalid.

Opinion of the Court

That would circumvent the high bar Congress is presumed to have chosen: the clear and convincing standard.  See *Microsoft Corp.* v. *i4i Ltd. Partnership*, 564 U. S. ___, ___–___ (2011) (slip op., at 8–10).  Defendants must meet that standard to rebut the presumption of validity.  *Ibid.*

To say that an invalid patent cannot be infringed, or that someone cannot be induced to infringe an invalid patent, is in one sense a simple truth, both as a matter of logic and semantics.  See *M. Swift & Sons, Inc.* v. *W. H. Coe Mfg. Co.*, 102 F. 2d 391, 396 (CA1 1939).  But the questions courts must address when interpreting and implementing the statutory framework require a determination of the procedures and sequences that the parties must follow to prove the act of wrongful inducement and any related issues of patent validity.  "Validity and infringement are distinct issues, bearing different burdens, different presumptions, and different evidence."  720 F. 3d, at 1374 (opinion of Newman, J.).  To be sure, if at the end of the day, an act that would have been an infringement or an inducement to infringe pertains to a patent that is shown to be invalid, there is no patent to be infringed.  But the allocation of the burden to persuade on these questions, and the timing for the presentations of the relevant arguments, are concerns of central relevance to the orderly administration of the patent system.

Invalidity is an affirmative defense that "can preclude enforcement of a patent against otherwise infringing conduct."  6A Chisum on Patents §19.01, p. 19–5 (2015).  An accused infringer can, of course, attempt to prove that the patent in suit is invalid; if the patent is indeed invalid, and shown to be so under proper procedures, there is no liability.  See *i4i, supra*, at ___–___ (slip op., at 11–12).  That is because invalidity is not a defense to infringement, it is a defense to liability.  And because of that fact, a belief as to invalidity cannot negate the scienter required for induced infringement.

There are also practical reasons not to create a defense based on a good-faith belief in invalidity. First and foremost, accused inducers who believe a patent is invalid have various proper ways to obtain a ruling to that effect. They can file a declaratory judgment action asking a federal court to declare the patent invalid. See *MedImmune, Inc.* v. *Genentech, Inc.*, 549 U. S. 118, 137 (2007). They can seek *inter partes* review at the Patent Trial and Appeal Board and receive a decision as to validity within 12 to 18 months. See §316. Or they can, as Cisco did here, seek *ex parte* reexamination of the patent by the Patent and Trademark Office. §302. And, of course, any accused infringer who believes the patent in suit is invalid may raise the affirmative defense of invalidity. §282(b)(2). If the defendant is successful, he will be immune from liability.

Creating a defense of belief in invalidity, furthermore, would have negative consequences. It can render litigation more burdensome for everyone involved. Every accused inducer would have an incentive to put forth a theory of invalidity and could likely come up with myriad arguments. See Sloan, Think it is Invalid? A New Defense to Negate Intent for Induced Infringement, 23 Fed. Cir. B. J. 613, 618 (2013). And since "it is often more difficult to determine whether a patent is valid than whether it has been infringed," *Cardinal*, 508 U. S., at 99, accused inducers would likely find it easier to prevail on a defense regarding the belief of invalidity than noninfringement. In addition the need to respond to the defense will increase discovery costs and multiply the issues the jury must resolve. Indeed, the jury would be put to the difficult task of separating the defendant's belief regarding validity from the actual issue of validity.

As a final note, "[o]ur law is . . . no stranger to the possibility that an act may be 'intentional' for purposes of civil liability, even if the actor lacked actual knowledge that

her conduct violated the law." *Jerman* v. *Carlisle, McNellie, Rini, Kramer & Ulrich, L. P. A.*, 559 U. S. 573, 582–583 (2010). Tortious interference with a contract provides an apt example. While the invalidity of a contract is a defense to tortious interference, belief in validity is irrelevant. Restatement (Second) of Torts §766, Comment *i* (1979). See also W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts 110 (5th ed. 1984). In a similar way, a trespass "can be committed despite the actor's mistaken belief that she has a legal right to enter the property." *Jerman*, *supra*, at 583 (citing Restatement (Second) of Torts §164, and Comment *e* (1963–1964)). And of course, "[t]he general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system." *Cheek* v. *United States*, 498 U. S. 192, 199 (1991). In the usual case, "I thought it was legal" is no defense. That concept mirrors this Court's holding that belief in invalidity will not negate the scienter required under §271(b).

### III

The Court is well aware that an "industry has developed in which firms use patents not as a basis for producing and selling goods but, instead, primarily for obtaining licensing fees." *eBay Inc.* v. *MercExchange, L. L. C.*, 547 U. S. 388, 396 (2006) (KENNEDY, J., concurring). Some companies may use patents as a sword to go after defendants for money, even when their claims are frivolous. This tactic is often pursued through demand letters, which "may be sent very broadly and without prior investigation, may assert vague claims of infringement, and may be designed to obtain payments that are based more on the costs of defending litigation than on the merit of the patent claims." L. Greisman, Prepared Statement of the Federal Trade Commission on Discussion Draft of Patent

Demand Letter Legislation before the Subcommittee on Commerce, Manufacturing, and Trade of the House Committee on Energy and Commerce 2 (2014). This behavior can impose a "harmful tax on innovation." *Ibid.*

No issue of frivolity has been raised by the parties in this case, nor does it arise on the facts presented to this Court. Nonetheless, it is still necessary and proper to stress that district courts have the authority and responsibility to ensure frivolous cases are dissuaded. If frivolous cases are filed in federal court, it is within the power of the court to sanction attorneys for bringing such suits. Fed. Rule Civ. Proc. 11. It is also within the district court's discretion to award attorney's fees to prevailing parties in "exceptional cases." 35 U. S. C. §285; see also *Octane Fitness, LLC* v. *ICON Health & Fitness, Inc.*, 572 U. S. ___, ___–___ (2014) (slip op., at 7–8). These safeguards, combined with the avenues that accused inducers have to obtain rulings on the validity of patents, militate in favor of maintaining the separation expressed throughout the Patent Act between infringement and validity. This dichotomy means that belief in invalidity is no defense to a claim of induced infringement.

The judgment of the United States Court of Appeals for the Federal Circuit is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE BREYER took no part in the consideration or decision of this case.

Scalia, J., dissenting

# SUPREME COURT OF THE UNITED STATES

_____

No. 13–896

_____

## COMMIL USA, LLC, PETITIONER *v.* CISCO SYSTEMS, INC.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

[May 26, 2015]

JUSTICE SCALIA, with whom THE CHIEF JUSTICE joins, dissenting.

I agree with the Court's rejection of the main argument advanced by Commil and the United States, that induced infringement under 35 U. S. C. §271(b) does not "requir[e] knowledge of the infringing nature of the induced acts." Brief for United States as *Amicus Curiae* 9; see also Brief for Petitioner 15–44. I disagree, however, with the Court's holding that good-faith belief in a patent's invalidity is not a defense to induced infringement.

Infringing a patent means invading a patentee's exclusive right to practice his claimed invention. *Crown Die & Tool Co.* v. *Nye Tool & Machine Works*, 261 U. S. 24, 40 (1923) (quoting 3 W. Robinson, Law of Patents §937, pp. 122–123 (1890)). Only valid patents confer this right to exclusivity—invalid patents do not. *FTC* v. *Actavis, Inc.*, 570 U. S. ___, ___ (2013) (slip op., at 8). It follows, as night the day, that only valid patents can be infringed. To talk of infringing an invalid patent is to talk nonsense.

Induced infringement, we have said, "requires knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc.* v. *SEB S. A.*, 563 U. S. ___, ___ (2011) (slip op., at 10). Because only valid patents can be infringed, anyone with a good-faith belief in a patent's *in*validity necessarily believes the

Scalia, J., dissenting

patent *cannot* be infringed. And it is impossible for any-one who believes that a patent cannot be infringed to induce actions that he *knows* will infringe it. A good-faith belief that a patent is invalid is therefore a defense to induced infringement of that patent.

The Court makes four arguments in support of the contrary position. None seems to me persuasive. First, it notes that the Patent Act treats infringement and validity as distinct issues. *Ante,* at 9–10. That is true. It is also irrelevant. Saying that infringement cannot exist without a valid patent does not "conflate the issues of infringement and validity," *ante,* at 10, any more than saying that water cannot exist without oxygen "conflates" water and oxygen. Recognizing that infringement requires validity is entirely consistent with the "long-accepted truth . . . that infringe-ment and invalidity are separate matters under patent law." *Ibid.*

The Court next insists that permitting the defense at issue would undermine the statutory presumption of validity. *Ante*, at 10–11. It would do no such thing. By reason of the statutory presumption of validity, §282(a), patents can be held invalid only by "clear and convincing evidence." *Microsoft Corp.* v. *i4i Ltd. Partnership*, 564 U. S. ___, ___ (2011) (slip op., at 1). This presumption is not weakened by treating a good-faith belief in invalidity as a defense to induced infringement. An alleged inducer who succeeds in this defense does not thereby call a pa-tent's validity into question. He merely avoids liability for a third party's infringement of a *valid* patent, in no way undermining that patent's presumed validity.

Next, the Court says that "invalidity is not a defense to infringement, it is a defense to liability." *Ante*, at 11. That is an assertion, not an argument. Again, to infringe a patent is to invade the patentee's right of exclusivity. An invalid patent confers no such right. How is it possible to interfere with rights that do not exist? The Court has

SCALIA, J., dissenting

no answer.

That brings me to the Court's weakest argument: that there are "practical reasons not to *create* a defense based on a good-faith belief in invalidity." *Ante*, at 12 (emphasis added); see also *ibid.* ("*Creating* a defense of belief in invalidity, furthermore, would have negative consequences" (emphasis added)).   Ours is not a common-law court. *Erie R. Co.* v. *Tompkins*, 304 U. S. 64, 78 (1938).  We do not, or at least should not, *create* defenses to statutory liability—and that is not what this dissent purports to do. Our task is to interpret the Patent Act, and to decide whether *it* makes a good-faith belief in a patent's invalidity a defense to induced infringement.  Since, as we said in *Global-Tech*, *supra,* the Act makes knowledge of infringement a requirement for induced-infringement liability; and since there can be no infringement (and hence no knowledge of infringement) of an invalid patent; good-faith belief in invalidity is a defense.  I may add, however, that if the desirability of the rule we adopt were a proper consideration, it is by no means clear that the Court's holding, which increases the *in terrorem* power of patent trolls, is preferable.  The Court seemingly acknowledges that consequence in Part III of its opinion.

For the foregoing reasons, I respectfully dissent.

## CERTIFICATE OF SERVICE

I hereby certify that, on this 12th day of June, 2015 I filed the foregoing

Statement of Defendant-Appellant Cisco Systems, Inc. in Support of Continued

Panel Review with the Clerk of the United States Court of Appeals for the Federal

Circuit via the CM/ECF system, which will send notice of such filing to all

registered CM/ECF users.


/s/ William F. Lee
WILLIAM F. LEE
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000