No. 2012-1042

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

COMMIL USA, LLC,

*Plaintiff-Appellee*,

v.

CISCO SYSTEMS, INC.,

*Defendant-Appellant.*

Appeal from the United States District Court for the Eastern District of Texas in case no. 07-CV-0341, Magistrate Judge Charles Everingham

**SUPPLEMENTAL BRIEF FOR DEFENDANT-APPELLANT
CISCO SYSTEMS, INC.**

JEFFREY E. OSTROW
HARRISON J. FRAHN IV
PATRICK E. KING
JONATHAN SANDERS
SIMPSON THACHER & BARTLETT LLP
2475 Hanover Street
Palo Alto, CA 94304
(650) 251-5000

HENRY B. GUTMAN
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000

August 4, 2015

WILLIAM F. LEE
MARK C. FLEMING
FELICIA H. ELLSWORTH
ERIC F. FLETCHER
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

SETH P. WAXMAN
WILLIAM G. MCELWAIN
FRANCESCO VALENTINI
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue, N.W.
Washington, DC 20006
(202) 663-6000

# CERTIFICATE OF INTEREST

Counsel Cisco Systems, Inc. certifies the following:

1. The full name of every party or *amicus* represented by us is:

Cisco Systems, Inc.

2. The names of the real party in interest represented by us is:

Not applicable

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

WILMER CUTLER PICKERING HALE AND DORR LLP:  William F. Lee, William G. McElwain, Mark C. Fleming, Jonathan Andron (former), Felicia H. Ellsworth, Seth P. Waxman, Francesco Valentini, Eric F. Fletcher

SIMPSON THACHER AND BARTLETT LLP:  George M. Newcombe, Henry B. Gutman, Jeffrey E. Ostrow, Harrison J. Frahn, IV, Patrick E. King, Victor Cole, Jonathan C. Sanders

IRELAND CARROLL & KELLEY, P.C.:  James Patrick Kelley, Otis W. Carroll, Jr.

POTTER MINTON P.C.: Michael E. Jones, Patrick Colber Clutter, IV

FINDLAY CRAFT, LLP: Eric Hugh Findlay

WARD & SMITH: Jack Wesley Hill

Dated:  August 4, 2015                    /s/ William F. Lee
                                          WILLIAM F. LEE

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ...............................................................................i

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION .....................................................................................................1

BACKGROUND ......................................................................................................2

ARGUMENT ............................................................................................................4

I.    Cisco's Customers Do Not "Divid[e]" The WiFi Protocol ......................4

II.    Neither Cisco's Customers Nor Cisco "Run[s] An Instance" Of The WiFi Protocol "For Each Connection" ......................7

CONCLUSION .......................................................................................................10

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

## CASES

Page(s)

*Commil USA, LLC v. Cisco Systems, Inc.*,
   720 F.3d 1361 (Fed. Cir. 2013) ............................................................. 1-2, 4-5, 7

*Gasoline Products Co. v. Champlin Refining Co.*,
   283 U.S. 494 (1931) ..................................................................................... 2

*Limelight Networks, Inc. v. Akamai Technologies, Inc.*,
   134 S. Ct. 2111 (2014) ................................................................................ 1, 4

## INTRODUCTION

Commil's claims against Cisco are based on a theory of induced infringement, which required Commil to prove direct infringement by Cisco's customers. To establish direct infringement of U.S. Patent No. 6,430,395 ("the '395 patent"), Commil had to prove that Cisco's customers practice each step of the sole independent claim. Unrefuted evidence establishes that Cisco's customers practice neither step. First, Commil's own witnesses, including its expert, testified that Cisco's customers do not "divid[e the] short range communication protocol" as required by the first step of the claim—rather, "dividing" occurs during the design and manufacture of the accused products. Thus, under *Limelight Networks, Inc. v. Akamai Techs., Inc.*, Commil cannot show direct infringement by Cisco's customers because no customer carries out each step of the claimed method. 134 S. Ct. 2111, 2117 (2014). Second, Cisco's customers do not "run[] … an instance" of the relevant WiFi protocol "for each connection," as required by the second step—Cisco's accused products run a single copy of the WiFi protocol for multiple connections. Because Cisco's customers do not directly infringe, Cisco cannot induce infringement. The judgment should be reversed, and there is no need for any proceedings on remand other than entry of judgment of noninfringement.[1]

---

[1] The Court initially declined to reach this issue after unanimously deciding that a third trial on induced infringement was needed due to the district court's erroneous jury instructions. *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361,

## BACKGROUND

The '395 patent claims "methods [to] provide seamless and reliable handoff … while [a] mobile device is moving" within a communications network. A165. The patent discloses "an architecture, a description of how to design a short-range communication system" (A6117(23:17-25)); the patent describes the claimed invention as "[m]ethods to *create* a cellular-like communications *system*" (A165 (emphases added)). Claim 1 recites:

> In a wireless communication system comprising at least two Base Stations, at least one Switch in communication with the Base Stations, a method of communicating between mobile units and the Base Stations comprising:
>
> *dividing a short-range communication protocol* into a low-level protocol for performing tasks that require accurate time synchronization and a high-level protocol which does not require accurate time synchronization; and
>
> *for each connection* of a mobile unit with a Base Station, *running an instance of the low-level protocol at the Base Station* connected with the mobile unit *and running an instance of the high-level protocol at the Switch*.

---

1372 (Fed. Cir. 2013). Directing judgment of noninfringement now will avoid an unnecessary third trial on induced infringement and damages and a second appeal. If the Court declines to direct judgment of noninfringement, however, the correct course remains a full retrial on induced infringement. Partial retrials violate the Seventh Amendment "unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500 (1931). Whether Cisco's customers directly infringed by practicing all steps of the claimed method is inextricably intertwined with the question whether Cisco had knowledge of such alleged direct infringement.

A209 (emphases added). The district court construed "short-range communication protocol" to mean "a set of procedures required to initiate and maintain short-range communication between two or more devices." A1. Under this construction, Commil asserted that Cisco *induced* infringement of the claimed method by selling "access points" (sometimes called lightweight access points or "LWAPs") and "controllers" to customers who were alleged to directly infringe the claim.[2]

The first step of the claimed method requires that the accused direct infringer, here Cisco's customers, perform the step of "dividing a short-range communication protocol" into a "low-level" protocol that resides on the "Base Station" and a "high-level" protocol that resides on the "Switch" that supports multiple base stations. A209. The "low-level" protocol on the base station contains procedures that have "real time requirements" (A197(15:5-7)) and therefore require frequent interaction with mobile units ("standard cordless telephone handsets," "PDA[s]," or "laptop or notebook computers,") (A191(3:46-48)). The "high-level" protocol placed on the switch includes procedures that do not depend on frequent communication with a mobile unit. A197(15:6-7).

The second step requires "running" a separate copy (or "instance") of the low-level and high-level protocols "for each connection" between a base station

---

[2]   Under Commil's theory, Cisco's access points allegedly correspond to the claimed "Base Station" and the controllers to the claimed "Switch."

and a mobile unit.  A209; A2.  This step permits the low-level protocol to follow a particular mobile unit while it is "roaming."  A197(15:63-16:6).  As depicted in Figures 8A and 8B of the patent (A174-175, *reprinted at* Blue Br. 15), when a mobile device moves from the coverage area of one base station to another, a dedicated copy of the low-level protocol is copied to the new base station.

## ARGUMENT

The Supreme Court recently reaffirmed that "inducement liability may arise 'if, **but only if**, [there is] … direct infringement.'"  *Limelight*, 134 S. Ct. at 2117 (emphasis added).  The jury was instructed, with no objection by Commil, that it could only find direct infringement by Cisco's customers if "a single party [] perform[ed] each and every step of [the] claimed method."  A6389(98:5-7).  Commil failed to prove direct infringement because the undisputed record evidence shows that Cisco's customers—the alleged direct infringers—do not practice either of claim 1's steps.  Blue Br. 31-35; Reply Br. 9-14.

### I.     CISCO'S CUSTOMERS DO NOT "DIVID[E]" THE WIFI PROTOCOL

The undisputed record demonstrates that Cisco's customers do not practice the first step of claim 1, which requires "dividing a short-range communication protocol into a low-level protocol . . . and a high-level protocol[.]"  A209.  The district court construed "short-range communication protocol" as "a set of procedures" (A1)—a construction that this Court affirmed.  *Commil*, 720 F.3d at

1372. Thus, to prove direct infringement, Commil was required to prove that Cisco's *customers* practice "dividing" the "set of procedures" that comprise the WiFi protocol into low-level and high-level protocols. But the record forecloses that proposition: the "procedures" are divided when the products are designed and manufactured, well before those products even reach Cisco's customers.

Commil's own witnesses—its expert and a named inventor of the '395 patent—testified that the WiFi procedures in Cisco's accused products were divided not by Cisco's customers, but when the products were designed and manufactured.[3] Commil's expert, Joseph McAlexander, testified that "the division of the set of procedures is done by Cisco when Cisco designs the system." A6197(68:12-15); *see also* A6198(70:10-13) ("Q. And isn't that your opinion, sir, for all acts of direct infringement, all acts of direct infringement, that the dividing was done by Cisco? A. Dividing is done by Cisco, yes."); A5769(94:17-18) ("Q. Well, who divided the protocol, sir? A. Cisco divided the protocol."). Named inventor Yaron Soffer also testified that the entity "who develops the system" is responsible for dividing the protocol (A6321(96:9-17)) and agreed that "[t]he customer doesn't have any impact or input into where the protocol is divided" (A6321(96:22-25)). Cisco's witness Bob O'Hara confirmed that "division [of the

---

[3] Cisco's witnesses testified that an unrelated third party, Atheros Communications, also participated in the dividing step. A5871(134:5-13). In any event, both parties agreed that Cisco's customers did not divide the protocol.

protocol] is fixed by the time the customer has [Cisco's] product in their hands" (A6290(124:10-12)), a fact that he was well-positioned to confirm because he himself had performed the division when designing the product (A6290(124:2-4)).

Commil does not dispute this uncontroverted evidence. Instead, trying to avoid this testimony, Commil contends that the "dividing" step somehow occurs in the base station "during operation" of Cisco's products each time a base station "determin[es] … how to process … packets in accordance with either low- or high-level protocols." Red Br. 25. By shifting the focus from dividing the protocol to the processing of packets, Commil re-defines the step in a manner contrary to the plain language of the claim, the testimony of Commil's expert, and the district court's claim construction. The step requires "dividing a short-range ***communication protocol*** into a low-level protocol … and a high-level protocol." A209 (emphasis added). Commil incorrectly focuses on the purported dividing of "packets" (*i.e.*, data bits) in a system that has already divided the protocol into "low- or high-level[s]." Red Br. 25. The *protocol* is not being divided under Commil's theory—it has already been divided.[4] Indeed, Commil's expert admitted that "dividing data [is] different from the dividing of the procedures." A6197(68:8-10); *accord* A198 (Table 1 showing "a division of the Bluetooth short

---

[4] Commil's argument would also collapse both steps of the method into one: processing data using the WiFi protocol is the same act that is alleged to comprise the "running" step discussed below.

range wireless protocol" with low-level procedures at base station and high-level procedures at switch); A193(7:7-12) (Figures 8A and 8B depict "an architecture for dividing the communication protocol"). Because no substantial evidence supports a finding that Cisco's customers practice the first step of claim 1, there can be no direct infringement and thus no induced infringement.[5]

## II. NEITHER CISCO'S CUSTOMERS NOR CISCO "RUN[S] AN INSTANCE" OF THE WIFI PROTOCOL "FOR EACH CONNECTION"

The second step of the claimed method requires "for each connection of a mobile unit with a Base Station, running an instance of the low-level protocol at the Base Station connected with the mobile unit and running an instance of the high-level protocol at the Switch." A209. The district court construed this step to require "***for each connection*** … running at the Base Station ***a copy*** of the low-level protocol ***supporting only that connection*** and running at the Switch ***a corresponding separate copy*** of the high-level protocol ***supporting only that connection***." A2 (emphases added). Therefore, Commil's claimed method would require running multiple "copies" of the protocols where multiple mobile units—such as laptop computers—are connected to the network via one base station. A system practicing the method would run a dedicated copy of the low-level protocol at the base station and a dedicated copy of the high-level protocol at the switch "for

---

[5] Commil abandoned its direct infringement claim against Cisco. *Commil*, 720 F.3d at 1377 n.4 (O'Malley, J., dissenting).

each [of the multiple] connection[s]," with each copy supporting *only* one connection. *See* A175(Fig. 8B) (showing two copies of the low-level protocol running on base station 123 simultaneously for two connections).

Again, the evidence forecloses Commil's direct infringement contention. Commil's expert conceded that Cisco's access points (alleged to correspond to the "Base Stations") run only one copy of the WiFi protocol at a time:

> Q. … [W]ould you agree with me, sir, that at any moment in time, there's only one copy of the Wi-Fi protocol running on an access point?
>
> A. If you're talking about the protocol being the entirety of the program, yes, there's only one of those.

A6204(97:3-8); *see also* A6018(43:1-5) ("Q. At any moment in time, there's only one copy of the Wi-Fi protocol running on an access point, correct? A. For clarification, the -- the claim protocol, the answer is yes."). And Cisco's witness, Mr. O'Hara, confirmed that Cisco's access points "need[] and use[] only one copy of the protocol to support all … mobile devices," regardless of the number of mobile units associated with that access point. A6268(35:7-11).

That each accused product fails to run multiple instances of the claimed protocols is supported further by Commil's testimony about the "beacon generation function" in Cisco's products. Access points transmit "beacons" (which are, under Commil's theory, part of the "low-level protocol" (A6196(62:1-4))) that permit mobile devices to compare the signal strength of different access points. If

Cisco's products ran a separate copy of the low-level protocol for each connection, then a separate beacon would be generated for each connection with a mobile unit. But Commil's expert conceded that Cisco's access points generate a *single* beacon that can support *hundreds* of mobile units simultaneously. A6196(62:1-14) (one beacon supports "one or tens of hundreds of different mobile units connected with a Cisco access point"). This defeats Commil's direct infringement contention—Cisco's access points do not run separate copies of the low-level protocol "for each connection … supporting *only* that connection." A2 (emphasis added).

Commil's attempts to explain away these undisputed facts are unavailing. Commil argued below that Cisco's access points maintain separate information about each connected mobile device's "state." A6176(128:9-129:20). But Commil failed to show how the supposed "state" information showed that Cisco's customers run separate copies of the low-level and high-level protocols for each connection. Tracking the current "state" of communication with a particular device within the WiFi program is not the same as running a separate copy of the "set of procedures" for each connection. Moreover, Commil's "state" theory was limited to the access point (the asserted "Base Station"). *See* A6157(52:15-18) (asserting that a "device … inside of the Cisco access point … operates as a state machine"). Commil said nothing about the requirement that the customer also run a copy of the high-level protocol at the controller (the asserted "Switch") for each

connection. Accordingly, even if this "state" theory sufficiently demonstrated that customers run separate copies of the *low-level protocol* on the access point (which it does not), Commil still failed to adduce evidence that Cisco's customers "run[] … a corresponding separate copy of the *high-level protocol*" for each connection at the claimed "Switch" as required by the second step. A2, A209.

In this Court, Commil similarly argued that Cisco's system maintains separate "information and instructions necessary to enable and maintain the communications" for each mobile unit. Red Br. 28. But this allegation does not demonstrate that Cisco's customers run a separate copy of the "protocol" (*i.e.*, the relevant "set of procedures") for each (and supporting only that) connection at both the access point and the controller. Commil's appellate argument likewise pointed to no evidence as to the high-level protocol, instead relying on irrelevant citations that nowhere suggest that Cisco runs a separate copy of the high-level protocol at the controller. Red Br. 28-29 n.10. Because no substantial evidence supports a finding that Cisco's customers practice the second limitation of claim 1, there can be no direct infringement and thus no induced infringement.

## CONCLUSION

For the foregoing reasons and those stated in Cisco's prior briefing, the Court should reverse the judgment and direct judgment of noninfringement.

Respectfully submitted,

/s/ William F. Lee

| | |
|---|---|
| JEFFREY E. OSTROW | WILLIAM F. LEE |
| HARRISON J. FRAHN IV | MARK C. FLEMING |
| PATRICK E. KING | FELICIA H. ELLSWORTH |
| JONATHAN SANDERS | ERIC F. FLETCHER |
| SIMPSON THACHER & BARTLETT LLP | WILMER CUTLER PICKERING HALE AND DORR LLP |
| 2475 Hanover Street | 60 State Street |
| Palo Alto, CA  94304 | Boston, MA  02109 |
| (650) 251-5000 | (617) 526-6000 |
| | |
| HENRY B. GUTMAN | SETH P. WAXMAN |
| SIMPSON THACHER & BARTLETT LLP | WILLIAM G. MCELWAIN |
| 425 Lexington Avenue | FRANCESCO VALENTINI |
| New York, NY  10017 | WILMER CUTLER PICKERING HALE AND DORR LLP |
| (212) 455-2000 | 1875 Pennsylvania Avenue, N.W. |
| | Washington, DC  20006 |
| | (202) 663-6000 |

*Attorneys for Defendant-Appellant Cisco Systems, Inc.*

August 4, 2015

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 4th day of August, 2015 I filed the foregoing Supplemental Brief for Defendant-Appellant Cisco Systems, Inc. with the Clerk of the United States Court of Appeals for the Federal Circuit via the CM/ECF system, which will send notice of such filing to all registered CM/ECF users.

                                        /s/ William F. Lee
                                        WILLIAM F. LEE
                                        WILMER CUTLER PICKERING
                                            HALE AND DORR LLP
                                        60 State Street
                                        Boston, MA  02109
                                        (617) 526-6000

# CERTIFICATE OF COMPLIANCE

Counsel for Defendant-Appellant Cisco, Inc. certifies that:

1.	The brief complies with the type-volume limitations of this Court's July 21, 2015 Order (ECF No. 101) because exclusive of the exempted portions it does not exceed 10 double-spaced pages.

2.	The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Word 2010 in a proportionally spaced typeface:  Times New Roman, font size 14 point.

/s/ William F. Lee  
WILLIAM F. LEE  
WILMER CUTLER PICKERING  
   HALE AND DORR LLP  
60 State Street  
Boston, MA  02109  
(617) 526-6000

August 4, 2015