No. 2012-1042

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

_____

COMMIL USA, LLC,

*Plaintiff-Appellee,*

v.

CISCO SYSTEMS, INC.,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the Eastern District of Texas in Case No. 07-CV-0341, Magistrate Judge Charles Everingham

## SUPPLEMENTAL BRIEF FOR PLAINTIFF-APPELLEE COMMIL

**SAYLES | WERBNER PC**
Mark S. Werbner
Richard A. Sayles
Mark D. Strachan
Darren P. Nicholson
4400 Renaissance Tower
1201 Elm Street
Dallas, TX 75270
(214) 939-8700

**HEIM, PAYNE & CHORUSH LLP**
Leslie V. Payne
Nathan J. Davis
Miranda Y. Jones
JP Morgan Chase Tower
600 Travis, Suite 6710
Houston, TX 77002
(713) 221-2000

August 18, 2015

# CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellee Commil USA, LLC, certifies the following:

1. The full name of every party or amicus represented by us is:

   Commil USA, LLC

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:

   None.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by us are:

   None.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by us in the trial court or agency or are expected to appear in this court are:

   **Sayles Werbner, P.C.:** Richard A. Sayles, Mark S. Werbner, Mark D. Strachan, Darren P. Nicholson, Eve L. Henson, Christopher W. Hogue, Eric D. Pearson, John A. Conway

   **Heim Payne & Chorush, LLP:** Leslie V. Payne, Nathan J. Davis, Miranda Y. Jones

Dated: August 18, 2015          /s/ Darren Nicholson
                                    Darren P. Nicholson

## TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................................ i

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ........................................................................................................1

I.    SUBSTANTIAL EVIDENCE SUPPORTS THE JURY'S FINDING THAT CISCO'S CUSTOMERS PERFORM THE "DIVIDING" STEP ........................................1

II.   SUBSTANTIAL EVIDENCE SUPPORTS THE JURY'S FINDING THAT CISCO'S CUSTOMERS PERFORM THE "RUNNING" STEP ........................................5

    A.    The Claims Do Not Require Running Multiple Instances Simultaneously ........................................................................................5

    B.    The Claims Permit Procedures that Apply to Multiple Devices, and Cisco's "Beacon" Argument Excludes the Preferred Embodiment ...........6

    C.    Cisco's Proposed Differentiation Between the Protocol And the State Information Referenced by Commil's Expert Is Inconsistent with the Specification and Excludes the Preferred Embodiment .............................8

III.  Cisco is Not Entitled to Retry Direct Infringement ...........................................9

CONCLUSION ..........................................................................................................10

CERTIFICATE OF SERVICE .................................................................................12

CERTIFICATE OF COMPLIANCE .......................................................................13

## TABLE OF AUTHORITIES

*AFG Indus., Inc. v. Cardinal IG Co.*,
  375 F.3d 1367 (Fed. Cir. 2004) ................................................................. 10

*Akamai Technologies, Inc. v. Limelight Networks, Inc.*,
  No. 2009-1372, slip op. (Fed. Cir. Aug. 13, 2015) ..................................... 4

*Akamai Technologies, Inc. v. Limelight Networks, Inc.*,
  629 F.3d 1311 (Fed. Cir. 2010) .................................................................. 4

*Gillette Co. v. Energizer Holdings, Inc.*,
  405 F.3d 1367 (Fed. Cir. 2005) .................................................................. 6

*Hockerson-Halberstadt, Inc. v. Converse Inc.*,
  183 F.3d 1369 (Fed. Cir. 1999) .................................................................. 3

*Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*,
  790 F.3d 1298 (Fed. Cir. 2015) ......................................................... 6, 7, 9

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004) .................................................................... 5

*Messinger v. Anderson*,
  225 U.S. 436 (1912) .................................................................................. 10

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008) .................................................................. 8

*St. Clair Intellectual Prop. Consultants, Inc. v. Canon Inc.*,
  412 F. App'x 270 (Fed. Cir. 2011) ............................................................. 4

*Toro Co. v. White Consol. Indus., Inc.*,
  383 F.3d 1326 (Fed. Cir. 2004) ................................................................. 10

*Trell v. Marlee Electronics Corp.*,
  912 F.2d 1443 (Fed. Cir. 1990) ................................................................. 10

*Versata Software, Inc. v. SAP Am., Inc.*,
  717 F.3d 1255 (Fed. Cir. 2013) .................................................................. 2

# INTRODUCTION

Cisco challenges the sufficiency of the evidence supporting the jury's finding of direct infringement and asks this Court to direct judgment of non-infringement in Cisco's favor. Because Cisco never offered expert testimony on non-infringement and its star witness, Mr. O'Hara, was heavily impeached at trial (Red Br. at 36), Cisco asks this Court to substitute the jury's weighing of the evidence and credibility determinations with Cisco's view of the evidence.

Cisco's non-infringement arguments are aimed at claim 1's two method steps – the "dividing" step and the "running" step – and Cisco's Supplemental Brief largely repeats the arguments Cisco made in its original opening brief. In addition to depending on an improper standard of appellate review, Cisco's arguments fail because they require importing unstated limitations into the claims that are contrary to the claim language and the specification. As stated below and in its opening brief, Commil requests that the Court hold that the jury's direct infringement finding was supported by substantial evidence, and that Cisco is barred from re-litigating its non-infringement arguments.

## I. SUBSTANTIAL EVIDENCE SUPPORTS THE JURY'S FINDING THAT CISCO'S CUSTOMERS PERFORM THE "DIVIDING" STEP

Commil presented substantial and unrebutted evidence that the accused products, <u>when used</u>, perform the "dividing" step. Cisco's argues that "dividing" refers only to <u>design</u> of the accused products and, therefore, the jury was

compelled to find noninfringement because Cisco's customers did not design anything. This argument is without merit.

First and foremost, Cisco did not ask the district court to construe the "dividing" step, and the jury was instructed that unconstrued claim language was to be interpreted "as it would be understood by one of ordinary skill in the art." A148(97:20-25). Commil offered expert testimony that those of skill in the art would conclude that the "dividing" step is performed by the LWAP <u>during operation</u> when it evaluates incoming packets, performs the low-level protocol functionality itself, and sends the high-level protocol procedures to the controller for execution. *See* Red Br. at 24-26. In the absence of a limiting construction—or a contrary expert opinion offered by Cisco—the jury was free to credit Mr. McAlexander's opinion. *See Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1262 (Fed. Cir. 2013) (where appellants had not requested a construction of "computer instructions," whether the term included source code became a "pure factual issue" and the jury was free to credit the appellee's expert's testimony). Having failed to seek a narrow construction of the "dividing" term or to offer any contrary evidence, Cisco cannot complain that the jury credited Commil's expert's application of the ordinary meaning of the claim language.[1] *See Id.*

---

[1] As explained in Commil's original brief, Cisco's claims that Commil's witnesses "conceded" that the claimed "dividing" occurs only during design and manufacture are inaccurate and rely on misinterpreted soundbites taken out of context. Red Br.

Second, had Cisco sought a construction limiting the "dividing" step to product <u>design</u> rather than <u>operation</u>, it would have failed because that construction is inconsistent with the claim language and specification. *Hockerson-Halberstadt, Inc. v. Converse Inc.*, 183 F.3d 1369, 1374 (Fed. Cir. 1999) ("Proper claim construction . . . demands interpretation of the entire claim in context, not a single element in isolation."). The preamble to claim 1 recites: "In a wireless communication <u>system</u> comprising at least two Base Stations, at least one Switch in communication with the Base Stations, a <u>method of communicating</u> between mobile units and the Base Stations comprising…" A209 (emphasis added). Thus, the claims are plainly directed to a method performed <u>by an existing system</u>—one that has already been designed and built—with steps that are performed during <u>communications</u> between mobile devices and base stations. Similarly, the specification refers to methods performed <u>during operation</u> of an existing system, not to a system's design. *E.g.*, A165 (Abstract) ("The methods provide seamless and reliable handoff of sessions between Base Stations while the mobile device is moving between picocells, by implementing a high-level of synchronization between the Base Stations and the Switch."). Cisco even tacitly acknowledged this

---

at 25-26. That testimony stands for nothing more than the unremarkable proposition that during the design process Cisco determined <u>where</u> the dividing of the protocol would occur during operation (*i.e.*, at the LWAP) and <u>how</u> the protocol would be divided (*i.e.*, which procedures would be performed at the LWAP and which would be performed at the controller). *Id.*

3

fact in its request for *ex parte* reexamination of the '395 patent. Request for *Ex Parte* Reexamination at 7, Control No. 90/011527 (Mar. 2, 2011), *available at* http://portal.uspto.gov/pair/PublcPair. (Explaining that claim 1 "form[s] a method of communicating between mobile units and base stations") (emphasis added).[3]

Finally, if this Court concludes that the "dividing" step is limited to product design, the Court should remand to give Commil an opportunity to present its case for direct infringement by Cisco under this Court's recent *en banc* decision in *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, No. 2009-1372, slip op. (Fed. Cir. Aug. 13, 2015) (*Akamai II*), which changed the law regarding divided infringement. At the second trial, Commil elected to focus on induced infringement for two reasons. First, Commil's infringement theory was based on operation of the accused products, and Cisco had not sought the limiting construction of "dividing" that it now seeks. Second, in April 2011, a divided infringement theory against Cisco and its customers was barred under *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 629 F.3d 1311 (Fed. Cir. 2010). Cisco admits that it divided the protocol during design of the accused products. *See* Cisco Supp. Br. at 5-6. It would be inequitable for this Court to adopt a new construction of the "dividing" step while depriving Commil of the opportunity to respond to such a construction by presenting a now viable divided infringement theory under *Akamai II*.

---

[3] "[T]his court can take judicial notice of the reexamination record." *St. Clair Intellectual Prop. v. Canon Inc.*, 412 F. App'x 270, 275 n. 1 (Fed. Cir. 2011).

## II. SUBSTANTIAL EVIDENCE SUPPORTS THE JURY'S FINDING THAT CISCO'S CUSTOMERS PERFORM THE "RUNNING" STEP

Regarding the "running" step, Cisco again imports unstated limitations that cannot be reconciled with the intrinsic record. Commil addresses three of Cisco's arguments here and respectfully refers the Court to Commil's original opening brief for its response to Cisco's remaining arguments. *See* Red Br. at 27-34.

### A. The Claims Do Not Require Running Multiple Instances Simultaneously

Contrary to Cisco's interpretation, independent claim 1 and the asserted dependent claims are satisfied by devices that run an instance of the protocol for each connected device, even if only one of those instances is running at any particular moment.[4] *Id.* at 29-30. Adopting Cisco's simultaneity requirement would violate the doctrine of claim differentiation because unasserted dependent claim 3 adds "using a real time multi-tasking operating system in order to allow handling of many instances of the protocols <u>simultaneously</u> in the Base Station and in the Switch." A209 (emphasis added); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) ("[W]here the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim, the doctrine of claim differentiation is at its strongest."). The specification also notes that running multiple instances of the protocol simultaneously is "preferabl[e]," not required.

---

[4] Not surprisingly, this is how the accused products work.

A197(16:12-15); *Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*, 790 F.3d 1298, 1306 (Fed. Cir. 2015) ("Though the preferred embodiment uses an oxidizing agent … we must be cautious not to import preferred limitations into the claims."). Thus, Cisco's attempt to import the simultaneity requirement must be rejected.

### B. The Claims Permit Procedures that Apply to Multiple Devices, and Cisco's "Beacon" Argument Excludes the Preferred Embodiment

Cisco's contention that the accused products cannot infringe because they include certain procedures (specifically, the "beacon" function) that support more than one device must be rejected for three independent reasons.

First, the claim language states that the recited protocol applies to established connections. A209(39:25-29) ("for each <u>connection</u> of a mobile unit with a Base Station, running an instance of the low-level protocol at the Base Station connected with the mobile unit and running an instance of the high-level protocol at the Switch." (emphasis added)); *see also* Red Br. at 31. But Cisco's "beacon" is used <u>before</u> a connection is established. A6156(48:9-49:2).

Second, the asserted method claims are "comprising" claims, and accordingly, would be infringed even if an additional step (*e.g.*, performing an additional function outside of the low- and high-level protocols) was added. *See Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1371-72 (Fed. Cir. 2005).

Third, Cisco's interpretation would improperly exclude the preferred embodiment. *See Kaneka*, 790 F.3d at 1304 (a construction "that excludes a

6

preferred embodiment is rarely, if ever, correct"). Specifically, the '395 patent describes several parts of the protocol that apply to multiple mobile devices:

- A base station can broadcast information to multiple unconnected handsets. *See* A203(27:65-67) ("In these times the Base Stations transmit to all handsets that are communicating with neighboring Base Stations.").

- A base station can perform a function that "synchronize[s] the TOD [Time of Day] of all the calls" that it is handling. *See* A208(37:63-67).

- A base station can run a procedure that sends a PING signal to every connected mobile unit. *See* A204(29:52-30:15). This procedure is shown in Figure 16A, which describes using an incrementing pointer (Tcount). *See* A204(30:1-9) and A183 (steps 404-407 of Fig. 16A).

- A base station can listen for ECHO signals sent by unconnected mobile units. *See* A204(29:52-59, 30:16-31) and A183 (steps 419-425 of Fig. 16A).

- A base station can synchronize itself with a neighboring base station by communicating with a separate network device referred to as the "beacon transmitter 299." *See* A198(18:4-6), A200 (22:34-39), and A176 (Fig. 9C).

If infringement of claim 1were avoided by merely performing a single function (*e.g.*, "beacon") that pertains to multiple mobile units, then the preferred embodiment would be excluded from every '395 claim, a result that is "rarely, if ever, correct." *Kaneka*, 790 F.3d at 1304. While Commil maintains that the district court's claim construction does not compel this result, if the Court disagrees, then the construction is legally incorrect, and this Court should affirm the jury's finding on the alternative ground that it is supported under a legally correct construction.[5]

---

[5] The district court's construction of "running an instance…" was proposed by Cisco and adopted over Commil's objection, which preserved this issue for

7

### C. Cisco's Proposed Differentiation Between the Protocol And the State Information Referenced by Commil's Expert Is Inconsistent with the Specification and Excludes the Preferred Embodiment

Cisco declares—without citation to any evidence—that "Tracking the current state of communication with a particular device within the WiFi program is not the same as running a separate copy of the 'set of procedures' for each connection." Cisco Supp. Br. at 9. Cisco further pronounces—again without citation—that Commil's expert testimony discussing how the accused products maintain and use separate state information for each connection "does not demonstrate that Cisco's customers run a separate copy of the 'protocol' ..." *Id.* at 10. In contrast to Cisco's *ipse dixit*, Commil's technical expert reviewed Cisco's technical documents and source code, monitored wireless traffic in a test system, and based on his analysis, testified that Cisco's accused products run a separate copy of the protocol for each connected device by using the state information for each connection to only communicate with one mobile device at a time (*i.e.*, each procedure that runs is part of the protocol for the mobile device with which the LWAP is then communicating). *See* Red Br. at 25 n.8, 27-30.

Cisco's theory presumes that the claims require "protocol" and "information" to be mutually exclusive. Cisco Supp. Br. at 9-10. But this is directly

---

appellate review. *See Commil USA, LLC v. Cisco Sys., Inc.*, No. 2:07-cv-341, Dkt. No. 145, at 22-24 (E.D. Tex. Apr. 10, 2009); *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1359 (Fed. Cir. 2008).

contrary to the specification, which describes copying the protocol between base stations in terms of sending "parameters," "information," and "states." *See, e.g.*, A191(4:6-8) (describing one base station "sending call parameters and rough synchronization information" to a neighboring base station to facilitate handoff); A197(16:59-62) ("The <u>information</u> which is broadcast by the current Base Station to the candidate next Base Stations includes <u>low-level communications protocol states and parameters</u>…" (emphasis added)); A198(18:10-14) ("Only call <u>parameters (e.g., low-level protocol)</u> need to be communicated between the current Base Station and [t]he neighboring candidate next Base stations." (emphasis added)); A199-200(20:46-47 and Table 2) ("Table 2, presents <u>elements (parameters) of the low-level protocols that the Base Stations will synchronize</u>." (emphasis added)); A200(21:38-45) ("Synchronizing the instances of the same protocols in different Base Stations is done as described above, <u>by sending internal state parameters via the local area network (LAN 140)</u>" (emphasis added). Again, Cisco's non-infringement theory is wrong because it requires the exclusion of the preferred embodiment from the scope of the claims. *Kaneka*, 790 F.3d at 1304.

### III. CISCO IS NOT ENTITLED TO RETRY DIRECT INFRINGEMENT

Finally, Cisco's new Seventh Amendment argument has no merit. Cisco Br. at 2, n.1. First, the *fact* of direct infringement and Cisco's *knowled*ge of that infringement are separate and distinct inquires. Cisco cites no case and makes no

9

argument to support its assertion that they are "inextricably intertwined." To the contrary, this panel has already held that "the issue of whether Cisco possessed a good-faith belief of invalidity is distinct and separate from the issue of whether the patent claims are invalid" and that a partial retrial would not violate the Seventh Amendment. Slip Op. at 17. Just as the *fact* of validity and one's *belief* in invalidity are separate and distinct inquiries, so too with direct infringement.

Second, a rejection of Cisco's arguments regarding direct infringement would be the law of the case, which prevents Cisco from re-litigating the issue. *Toro Co. v. White Consol. Indus., Inc.*, 383 F.3d 1326, 1335-37 (Fed. Cir. 2004); *see also Messinger v. Anderson*, 225 U.S. 436, 444 (1912). This Court has repeatedly applied the doctrine of law of the case to determinations of claim construction and infringement. *See, e.g., AFG Indus., Inc. v. Cardinal IG Co.*, 375 F.3d 1367, 1372 (Fed. Cir. 2004) (applying law of the case to claim construction); *Trell v. Marlee Electronics Corp.*, 912 F.2d 1443, 1445 (Fed. Cir. 1990) ("[o]ur judgment concerning liability is the law of this case"). Accordingly, Cisco cannot relitigate issues decided by this panel, including direct infringement.

## CONCLUSION

For these reasons and those stated in Commil's prior briefing, the Court should deny Cisco's request for a directed judgment of noninfringement.

Respectfully submitted,

/s/ Darren Nicholson
Mark S. Werbner
Richard A. Sayles
Mark D. Strachan
Darren P. Nicholson
**SAYLES | WERBNER PC**
4400 Renaissance Tower
1201Elm Street
Dallas, TX 75270
(214) 939-8700

Leslie V. Payne
Nathan J. Davis
Miranda Y. Jones
**HEIM, PAYNE & CHORUSH LLP**
JP Morgan Chase Tower
600 Travis, Suite 6710
Houston, TX 77002
(713) 221-2000

*Counsel for Plaintiff-Appellee*
*Commil USA, LLC*

## CERTIFICATE OF SERVICE

In accordance with Fed. R. App. P. 25 and Fed. Cir. R. 25, I certify that I have this day filed and served the foregoing document upon all counsel of record via the court's CM/ECF system.

Dated: August 18, 2015

>                     /s/ Darren Nicholson
>                     Darren P. Nicholson
>                     SAYLES | WERBNER PC
>                     4400 Renaissance Tower
>                     1201 Elm Street
>                     Dallas, Texas 75270
>                     (214) 939-8700

# CERTIFICATE OF COMPLIANCE

Counsel for Plaintiff-Appellee Commil USA, LLC certifies that:

1. This brief complies with the type-volume limitations of this Court's July 21, 2015 Order (ECF No. 101) because exclusive of the exempted portions it does not exceed 10 double-spaced pages.

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Word 2010 in a proportionally spaced typeface: Times New Roman, font size 14 point.

Dated: August 18, 2015

/s/ Darren Nicholson
Darren P. Nicholson
SAYLES | WERBNER PC
4400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
(214) 939-8700